IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROHIT NANDAKUMAR,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br><br>MAJESCO, ADAM ELSTER, EARL GALLEGOS, RAJESH HUKKU, CAROLYN JOHNSON, DR. ARUN K. MAHESHWARI, KETAN MEHTA, SUDHAKAR RAM, and ROBERT P. RESTREPO, JR.,<br><br>　　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Rohit Nandakumar ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Majesco ("Majesco" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Majesco and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Majesco and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Thoma Bravo, L.P. and its affiliates ("Thoma Bravo") (the "Proposed Transaction").

2. On July 20, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Thoma Bravo. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $16.00 in cash per share of Majesco owned (the "Merger Consideration").

3. On August 24, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Majesco and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Majesco shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of Majesco shares.

9.     Defendant Majesco is incorporated under the laws of California and has its principal executive offices located at 412 Mt. Kemble Ave., Suite 110C, Morristown, New Jersey 07960. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "MJCO."

10.    Defendant Adam Elster ("Elster") is and has been a director of Majesco at all times during the relevant time period.

11.    Defendant Earl Gallegos ("Gallegos") is and has been a director of Majesco at all times during the relevant time period.

12. Defendant Rajesh Hukku ("Hukku") is and has been a director of Majesco at all times during the relevant time period.

13. Defendant Carolyn Johnson ("Johnson") is and has been a director of Majesco at all times during the relevant time period.

14. Defendant Arun K. Maheshwari ("Maheshwari") is and has been a director of Majesco at all times during the relevant time period.

15. Defendant Ketan Mehta ("Mehta') is and has been the Chairman of the Company's Board at all times during the relevant time period.

16. Defendant Sudhakar Ram ("Ram") is and has been a director of Majesco at all times during the relevant time period.

17. Defendant Robert P. Restrepo, Jr. ("Restrepo") is and has been a director of Majesco at all times during the relevant time period.

18. Defendants Elster, Gallegos, Hukku, Johnson, Maheshwari, Mehta, Ram, and Restrepo are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Majesco, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Majesco provides cloud insurance software solutions for insurance business transformation. The Company supplies its CloudInsurer® solutions, as cloud-based insurance platforms, along with distribution management and data and analytics solutions. The Company also provides Digital1st® solutions, which offers a cloud-native, digital engagement and microservices platform-as-a-service for the entire insurance business and an ecosystem of

partners with apps that provide innovative data sources and capabilities. In addition to the United States, Majesco operates in Canada, Mexico, the United Kingdom, Malaysia, Singapore, Ireland and India.

### **The Company Announces the Proposed Transaction**

21. On July 20, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> MORRISTOWN, N.J.--(BUSINESS WIRE)--Majesco (NASDAQ: MJCO), a global leader of cloud insurance software solutions for insurance business transformation, today announced that it has signed a definitive agreement to be acquired by Thoma Bravo, L.P., a leading private equity firm focused on the software and technology-enabled services sectors, in a transaction valuing the company at $594 million. Following the closing of the transaction, Majesco will operate as a privately held company.
>
> Under the terms of the agreement, all Majesco shareholders of record will receive $13.10 in cash for each share of Majesco common stock upon closing of the transaction. The price represents a premium of approximately 74% over Majesco's average closing price during the 30-trading day period ended July 17, 2020.
>
> The proposed merger is subject to the approval of Majesco shareholders and the approval of the shareholders of Majesco's parent company, Majesco Limited. Majesco's Board of Directors has unanimously approved the merger and recommends that shareholders approve the merger and Majesco Limited's Board of Directors has unanimously approved the divestment of Majesco and recommended to its shareholder to approve the transaction. Majesco will solicit written consents from its shareholders to approve the Merger Agreement and expects to distribute the written consents in August 2020.
>
> Completion of the merger is not subject to a financing condition but is subject to the accuracy of the representations and warranties, performance of the covenants and other agreements included in the Merger Agreement and customary closing conditions for a transaction of this type, including regulatory approvals in the US and India. Assuming satisfaction of those conditions, the Company expects the merger to close on or before the end of 2020.

Upon completion of the transaction, Majesco expects to continue to operate under the leadership of CEO Adam Elster and the existing Majesco Leadership Team.

"Our decision was made with the best interests of our stockholders and we believe that the transaction will also benefit our 2,400+ employees and our more than 200 customers," said Elster. "We are extremely excited to partner with Thoma Bravo, a firm with an established track record of working with companies transitioning to the cloud. This transaction delivers significant cash value to our stockholders. Moreover, the added flexibility we will have as a private company, combined with the benefit of Thoma Bravo's knowledge and domain expertise, can allow us to more effectively focus on our long-term investment and growth objectives, to the benefit of our employees, customers and partners. We are in alignment with Thoma Bravo on our strategic vision to help global insurers transition to the cloud."

"We see Majesco as a leader in helping its insurance customers get to the cloud faster, and modernize their internal and external facing systems," said A.J. Rohde, a partner at Thoma Bravo. "We have tremendous confidence that Adam Elster and his management team, coupled with our operating capabilities and experience in this market, can help these customers fulfill that journey even quicker and more ambitiously."

Matt LoSardo, a Vice President at Thoma Bravo added, "We've followed the impressive Majesco journey for many years. Digital transformation demand continues to grow as insurers look to modernize, and with our partnership we plan to accelerate product investment to support the needs of the insurance industry."

Nomura Securities International, Inc. is acting as financial advisor to Majesco, and Sheppard, Mullin, Richter & Hampton LLP and Khaitan & Co are acting as legal advisors to Majesco and Majesco Limited, respectively. Kirkland & Ellis LLP is acting as legal advisor to Thoma Bravo.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22.     On August 24, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

24. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

26. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to, Adjusted EBITDA.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Nomura's Financial Opinion**

29. The Proxy Statement contains the financial analyses and opinion of Nomura Securities International, Inc. ("Nomura") concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to Nomura's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed by Nomura in its analysis.

31. With respect to Nomura's *Comparable Companies Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed by Nomura in its analysis.

32. With respect to Nomura's *Premiums Paid Analysis*, the Proxy Statement fails to disclose which specific transactions were observed by Nomura in the analysis, as well as the premiums paid in each of the transactions.

33. Lastly, the Proxy Statement fails to disclose the basis for the Boards decision to instruct Nomura not to conduct a discounted cash flow analysis as part of its financial analyses.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Majesco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Majesco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50. In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 26, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*